IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AHMAD J. ABDULLAH,

    Plaintiff,

v.                              Civil Action No. 21-506-GBW

MARTIN O'MALLEY,[1]
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION

Ahmad J. Abdullah, Wilmington, Delaware. Pro Se Plaintiff.

Shawn Carver and Erica Adams, Social Security Administration, Baltimore, Maryland. Attorneys for Defendant.

April 1, 2024
Wilmington, Delaware

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023 and is substituted for Kilolo Kijakazi as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

**Williams, U.S. District Judge:**

Plaintiff, Ahmad J. Abdullah, who appears *pro se*, appeals the decision of Defendant Commissioner of Social Security, denying his application for disability insurance benefits ("DBI") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. Jurisdiction exists pursuant to 42 U.S.C. § 405(g). Presently pending before the Court is Defendant's revised motion for summary judgment. (D.I. 21).[2] Plaintiff has not responded to Defendant's motion. He did, however, file a "Case Brief." (D.I. 18).

## I.   BACKGROUND

Plaintiff applied for benefits in November 2018, alleging disability beginning December 2, 2016. The claims were denied, and Plaintiff requested a hearing before an Administrative Law Judge ("AJL").

The ALJ, NaKeisha Blount, conducted the hearing telephonically on July 28, 2020. The ALJ heard testimony from Plaintiff, who was represented by counsel,

---

[2] Defendant's initial motion for summary judgment (D.I. 19) was superseded by the revised motion for summary judgment and, accordingly, will be denied as moot.

and a Vocational Expert. At the hearing, Plaintiff amended his alleged onset date from December 2, 2016 to October 24, 2018.[3]

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2021, and had not engaged in substantial gainful activity since October 24, 2018, his alleged onset date. (D.I. 14 at 26). She also found that Plaintiff was impaired by Parkinsonism, degenerative disc disease of the spine, and Bipolar disorder, which were severe impairments, but that did not meet or equal the severity requirements of the Listing of Impairments. (*Id.* at 26-28).

The ALJ found that Plaintiff:

- Could perform medium work as defined in 20 CFR § 404.1567(c) and 416.967(c) except that he could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.
- Could frequently finger, handle, and reach.
- Could have occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dust, gases, poor ventilation, and vibrations.
- Could perform simple, routine, repetitive tasks.
- Could have frequent interaction with supervisors and co-workers, but no more than occasional interaction with the public.

(*Id.* at 28). In response to the ALJ's hypothetical question whether an individual of Plaintiff's age, education, work background, and the above-described

---

[3] Plaintiff had filed a previous application for DIB and SSI in September 2016. Those claims were ultimately denied in an ALJ decision dated October 23, 2018. Accordingly, Plaintiff amended his alleged onset date to the day after the ALJ issued the earlier unfavorable decision.

limitations, as well as some additional limitations,[4] could perform work at the medium level, the Vocational Expert testified that the worker would be capable of performing representative unskilled medium occupations, including laundry laborer and agricultural produce packer, representing tens of thousands of jobs in the national economy. (*Id.* at 91-92). The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of Plaintiff's request for review.

Plaintiff filed this civil action, *pro se*, seeking judicial review of the Commissioner's decision. He appeals on the grounds that that the ALJ did not properly consider the impact of his Bi-polar medication's side effects on his ability to work. The Commissioner seeks summary judgment and argues that substantial evidence supports the ALJ's decision that Plaintiff is not disabled.

## II. LEGAL STANDARDS

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more

---

[4] *See* D.I. 14 at 92-93 (modifying the limitations of the hypothetical individual to "climb ramps and stairs only occasionally; never climb ladders, ropes, or scaffolds and occasionally balance, stoop, kneel, crouch, crawl").

3

than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). Evidence that was not submitted to the ALJ can be considered, however, by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has made clear that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a

4

conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## III. DISABILITY DETERMINATION PROCESS

A "disability" is defined for purposes of disability insurance benefits and supplemental security income as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Hess v. Commissioner of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of nondisability when claimant is engaged in substantial gainful activity); *Hess*, 931 F.3d at 201. If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *Id.* If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (20 C.F.R § 404.1520, Subpart P, Appendix 1) that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii); *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014). When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *Id.* If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e); *Hess*, 931 F.3d at 201.

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Zirnsak*, 777 F.3d at 611. A claimant's RFC "is the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1); 416.945(a)(1); *Hess*, 931 F.3d at 202 (quoting 20 C.F.R. § 404.1545(a)(1)). "[T]he claimant always bears the burden of establishing (1) that [he] is severely impaired, and (2) either that the severe impairment meets or equals a listed impairment, or that it prevents [him] from performing [his] past work." *Zirnsak*, 777 F.3d at 611 (quoting *Wallace v. Secretary of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). If the claimant cannot perform his past relevant work, the ALJ moves on to step five. *Hess*, 931 F.3d at 202.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 20 C.F.R. § 416.920(a)(4)(v) and (g); *Hess*, 931 F.3d at 202. That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

At this last step, ". . . the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Zirnsak*, 777 F.3d at 612 (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). In other words, the Commissioner ". . . is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given his residual functional capacity and vocational factors." 20 C.F.R. §§ 404.1560(c)(2); 416.960.(c)(2). "'Ultimately, entitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy.'" *Zirnsak*, 777 F.3d 612 (quoting *Provenzano v. Commissioner*, 2011 WL 3859917, at *1 (D.N.J. Aug. 31, 2011)).

8

When mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis and an ALJ assesses mental impairments. 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *Hess*, 931 F.3d at 202. As part of step two of the disability analysis, the ALJ decides whether the claimant has any "medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (providing that, at step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment"); *Hess*, 931 F.3d at 202. "[A]s part of that same step and also step three of the disability analysis, the ALJ determines 'the degree of functional limitation resulting from the impairment(s)[.]'" *Hess*, 931 F.3d at 202 (quoting 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2) and citing 20 C.F.R. §§ 404.1520a(d), 416.920a(d), 404.1520(a)(4)(ii)-(iii), 416.920(a)(4)(ii)-(iii) (explaining that the ALJ uses "the degree of functional limitation" in assessing "the severity of [the claimant's] mental impairment(s)[,]" which is considered at steps two and three)).

In determining the degree of functional limitation, the ALJ considers "four broad functional areas . . .: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *Hess*, 931 F.3d at 202. The first three areas

9

are rated on a "five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4); *Hess*, 931 F.3d at 202. The fourth is rated on a scale of: "None, one or two, three, four or more." *Id.*

"The ALJ uses that degree rating in 'determin[ing] the severity of [the] mental impairment(s)[,]' which is considered at steps two and three. *Hess*, 931 F.3d at 202 (quoting 20 C.F.R. §§ 404.1520a(d), 416.920a(d) and citing 20 C.F.R. §§ 404.1520(a)(4)(ii)-(iii), 416.920(a)(4)(ii)-(iii) (stating that, at steps two and three, the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)"). "If . . . the degree of [the claimant's] limitation in the first three functional areas [is] 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in his ability to do basic work activities." *Hess*, 931 F.3d at 202 (quoting 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (citation omitted)).

"At step three, if the ALJ has found that a mental impairment is severe, he 'then determine[s] if it meets or is equivalent in severity to a listed mental disorder.'" *Hess*, 931 F.3d at 202 (quoting 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2) and citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (explaining that, at step three, the ALJ determines whether the claimant has "an

10

impairment(s) that meets or equals" a listed impairment). "That analysis is done 'by comparing the medical findings about [the claimant's] impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder.'" *Hess*, 931 F.3d at 203 (quoting 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2)). As explained by the Third Circuit, "the claimant may have the equivalent of a listed impairment if, *inter alia*, he has at least two of '1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]'" *Hess*, 931 F.3d at 203 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1).

"[T]o complete steps four and five of the disability analysis, if the ALJ has found that the claimant does not have a listed impairment or its equivalent, the ALJ 'will then assess [the claimant's mental RFC].'" *Hess*, 931 F.3d at 203 (quoting 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3) and citing 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v), 416.920(a)(4)(iv)-(v) (providing that, at steps four and five, the ALJ considers the claimant's RFC)).

## IV. DISCUSSION

Plaintiff filed his Complaint *pro se*, and therefore, the Court must liberally construe his pleadings, and "apply the applicable law, irrespective of whether [he]

has mentioned it by name." *Holley v. Department of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999); *see also Leventry v. Astrue*, 2009 WL 3045675 (W.D. Pa. Sept. 22, 2009) (applying same in the context of a social security appeal).

After thoroughly reviewing the administrative record, the Court is struck by the ALJ's handling of limitations based on Plaintiff's use of his hands. The objective medical evidence establishes quite clearly that Plaintiff suffers from tremors in his hands, which appears to be a symptom of Parkinsonism that is likely caused by his Bi-polar medication. Plaintiff testified in depth about how the shaking in his hands impacts his day-to-day life. For example, he testified that he cannot prepare meals beyond sandwiches, he needs help eating because the shaking makes it hard to get the food to his mouth, he can only carry three to five pounds in each hand (the shaking causes him to drop heavier items), he needs help washing himself in the shower, he cannot tie his shoes (he can push the ends of his laces into his shoes and slip them on), he cannot button shirts, and he cannot pick coins up from a table (instead he slides them to the edge into his open hand). (D.I. 14 at 66, 69-71, 80-82).

In her decision, the ALJ noted some of this testimony. (*Id.* at 27, 29). However, in determining as part of Plaintiff's RFC that he could "frequently

finger, handle, and reach,"[5] the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 29-30). As to the "other evidence," the ALJ repeatedly referenced Plaintiff's "reported activity level." (*Id.* at 30, 35, 36). The ALJ characterized Plaintiff's "reported activity level" thusly:

> The claimant . . . remains generally independent in [his] activities of daily living. In addition, the evidence reveals that the claimant has maintained a high level of activity despite his impairments. He has reported [being] able to bathe and dress himself independently, perform household chores, including taking out the garbage and making his bed, prepare simple meals, shop in stores, use Facebook, spend time with family, exercise, read magazines, and walk.

(*Id.* at 34-35). For support of this characterization, the ALJ cited Plaintiff's hearing testimony, a January 2019 Functional Report, which Plaintiff completed with the assistance of his mother, and a February 2019 Psychological Evaluation completed by a licensed psychologist.

In the Functional Report, Plaintiff reported that he could lift 10 pounds; that he "keeps it simple" in terms of dress, and that socks and underwear were hard to put on; that he showered alone; that he cut himself frequently when shaving; that

---

[5] "Frequently" is defined as from 1/3 to 2/3 of the workday. "Occasionally" is defined as less than 1/3 of the workday. (D.I. 14 at 361, 661, 665).

his tremors interfered with eating and drinking; that he very rarely prepared food, and the most he could do was make sandwiches about three times a month, with the preparation taking an hour; that he would take the garbage out once a week and it took him ten minutes to do so; and that he made his bed once a week and it took him fifteen minutes to do so. (*Id.* at 343-50). In the Psychological Evaluation, the psychologist noted that Plaintiff reported:

> Ahmad told me that he can dress and bathe independently and he does simple household chores such as taking out the garbage and preparing sandwiches. He indicated that his mother does his laundry and much of their cooking.

(*Id.* at 655).

Given the sum total of the relevant information contained in the Functional Report and Psychological Evaluation, the ALJ's summary that Plaintiff reported that he "was able to bathe and dress himself independently, perform household chores, including taking out the garbage and making his bed, [and] prepar[ing] simple meals," was a mischaracterization of the record. It omitted crucial details such as the frequency and duration of these tasks—preparing one simple meal three times a month and it taking an hour to do so, taking the garbage out once a week and it taking ten minutes to do so, and making his bed once a week and it taking fifteen minutes to do so. The ALJ also omitted the reported "simple" nature of Plaintiff's dress (presumably avoiding clothing with buttons and shoes

14

with laces, consistent with the attendant difficulties described in his hearing testimony), and the challenges presented by socks and underwear. Although these details were not included in the Psychological Evaluation, that was a second-hand report, and nothing therein contradicted these details.

Based in large part on the ALJ's characterization of Plaintiff's "reported activity level," the ALJ found unpersuasive the opinions of primary care provider Stephanie Judy, APRN, FNP-C, who evaluated Plaintiff on July 8, 2019, and concluded, as relevant, that he "could use his hands for 10% or less of the workday." (*Id.* at 30). The ALJ's determination that Nurse Judy's opinions were unpersuasive was undoubtedly dispositive. When Plaintiff's counsel asked the Vocational Expert at the hearing about the effect on available jobs if Plaintiff could only use his hands for 10% or less of the workday, the Vocational Expert testified that all of the jobs she listed—*i.e.*, laundry laborer and agricultural produce packer—would be eliminated.

In terms of a vocational expert's testimony, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). An ALJ does not have to include every alleged impairment, but only "a claimant's

15

credibly established limitations." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id.* (internal quotation marks omitted).

The Court concludes, on this record, that there was not substantial evidence to present the Vocational Expert with an RFC that included that Plaintiff could "frequently finger, handle, and reach," where that classification was based largely on the ALJ's mischaracterization of Plaintiff's reported activity level. On remand, the ALJ may ultimately come to the same conclusion, but the explanation may not rely on a mischaracterization of Plaintiff's reported activity level.

## V. CONCLUSION

For the reasons discussed above, the Court will: (1) deny as moot the Commissioner's initial cross-motion for summary judgment (D.I. 18); (2) deny the Commissioner's revised cross-motion for summary judgment (D.I. 21); (3) vacate the Commissioner's decision denying DIB and SSI; and (4) remand this matter to the Commissioner of the Social Security Administration to direct the ALJ to conduct additional proceedings consistent with this Memorandum Opinion.

A separate order will be entered.